**Fill in this information to identify the case:**

United States Bankruptcy Court for the:

**Southern District of Texas**

(State)

Case number *(if known)*: _____     Chapter    11

☐ Check if this is an
amended filing

Official Form 201

# Voluntary Petition for Non-Individuals Filing for Bankruptcy

06/22

If more space is needed, attach a separate sheet to this form.  On the top of any additional pages, write the debtor's name and the case number (if known).  For more information, a separate document, *Instructions for Bankruptcy Forms for Non-Individuals*, is available.

| | | |
|---|---|---|
| 1. | **Debtor's Name** | **CARD Holdings, LLC** |
| 2. | **All other names debtor used in the last 8 years**<br><br>Include any assumed names, trade names, and *doing business as* names | **N/A** |
| 3. | **Debtor's federal Employer Identification Number** (EIN) | **95-4641453** |

4. **Debtor's address**

| Principal place of business | Mailing address, if different from principal place of business |
|---|---|
| **9089 S Pecos Road**<br>Number          Street | Number          Street |
| **Suite 3600** | |
| **Henderson**          **Nevada**          **89074**<br>City                    State        Zip Code | City                    State        Zip Code |
| | **Location of principal assets, if different from principal place of business** |
| **Clark**<br>County | Number          Street |
| | City                    State        Zip Code |

| | | |
|---|---|---|
| 5. | **Debtor's website** (URL) | **https://www.centerforautism.com** |
| 6. | **Type of debtor** | ☒ Corporation (including Limited Liability Company (LLC) and Limited Liability Partnership (LLP))<br><br>☐ Partnership (excluding LLP)<br><br>☐ Other. Specify: _____ |

Debtor   **CARD Holdings, LLC**                                    Case number *(if known)* _____
         <sub>Name</sub>

---

**7. Describe debtor's business**

A. *Check One:*

☒ Health Care Business (as defined in 11 U.S.C. § 101(27A))

☐ Single Asset Real Estate (as defined in 11 U.S.C. § 101(51B))

☐ Railroad (as defined in 11 U.S.C. § 101(44))

☐ Stockbroker (as defined in 11 U.S.C. § 101(53A))

☐ Commodity Broker (as defined in 11 U.S.C. § 101(6))

☐ Clearing Bank (as defined in 11 U.S.C. § 781(3))

☐ None of the above

B. *Check all that apply:*

☐ Tax-exempt entity (as described in 26 U.S.C. § 501)

☐ Investment company, including hedge fund or pooled investment vehicle (as defined in 15 U.S.C. § 80a-3)

☐ Investment advisor (as defined in 15 U.S.C. § 80b-2(a)(11))

C. NAICS (North American Industry Classification System) 4-digit code that best describes debtor. See http://www.uscourts.gov/four-digit-national-association-naics-codes .
**6214 (Outpatient Care Centers)**

---

**8. Under which chapter of the Bankruptcy Code is the debtor filing?**

*Check One:*

☐ Chapter 7

☐ Chapter 9

☒ Chapter 11. *Check all that apply:*

A debtor who is a "small business debtor" must check the first sub- box. A debtor as defined in § 1182(1) who elects to proceed under subchapter V of chapter 11 (whether or not the debtor is a "small business debtor") must check the second sub-box.

☐ The debtor is a small business debtor as defined in 11 U.S.C. § 101(51D), and its aggregate noncontingent liquidated debts (excluding debts owed to insiders or affiliates) are less than $3,024,725. If this sub-box is selected, attach the most recent balance sheet, statement of operations, cash-flow statement, and federal income tax return or if any of these documents do not exist, follow the procedure in 11 U.S.C. § 1116(1)(B).

☐ The debtor is a debtor as defined in 11 U.S.C. § 1182(1), its aggregate noncontingent liquidated debts (excluding debts owed to insiders or affiliates) are less than $7,500,000, **and it chooses to proceed under Subchapter V of Chapter 11.** If this sub-box is selected, attach the most recent balance sheet, statement of operations, cash-flow statement, and federal income tax return, or if any of these documents do not exist, follow the procedure in 11 U.S.C.§ 1116(1)(B).

☒ A plan is being filed with this petition.

☐ Acceptances of the plan were solicited prepetition from one or more classes of creditors, in accordance with 11 U.S.C. § 1126(b).

☐ The debtor is required to file periodic reports (for example, 10K and 10Q) with the Securities and Exchange Commission according to § 13 or 15(d) of the Securities Exchange Act of 1934. File the *Attachment to Voluntary Petition for Non-Individuals Filing for Bankruptcy under Chapter 11* (Official Form 201A) with this form.

☐ The debtor is a shell company as defined in the Securities Exchange Act of 1934 Rule 12b-2.

☐ Chapter 12

---

**9. Were prior bankruptcy cases filed by or against the debtor within the last 8 years?**

If more than 2 cases, attach a separate list.

☒ No
☐ Yes.

| | District | | When | MM/DD/YYYY | Case number | |
|---|---|---|---|---|---|---|
| | District | _____ | When | _____ | Case number | _____ |
| | | | | MM/DD/YYYY | | _____ |

---

Debtor   <u>CARD Holdings, LLC</u>                                    Case number *(if known)*   _____
      Name

| | |
|---|---|

**10. Are any bankruptcy cases pending or being filed by a business partner or an affiliate of the debtor?**

    List all cases. If more than 1, attach a separate list.

☐ No
☒ Yes.  Debtor  **See Rider 1**      Relationship  <u>**Affiliate**</u>

          District  **Southern District of Texas**    When  <u>**6/11/2023**</u>
                                      MM / DD / YYYY

          Case number, if known  _____

**11. Why is the case filed in *this district*?**

*Check all that apply:*

☐  Debtor has had its domicile, principal place of business, or principal assets in this district for 180 days immediately preceding the date of this petition or for a longer part of such 180 days than in any other district.

☒  A bankruptcy case concerning debtor's affiliate, general partner, or partnership is pending in this district.

**12. Does the debtor own or have possession of any real property or personal property that needs immediate attention?**

☒ No
☐ Yes. Answer below for each property that needs immediate attention. Attach additional sheets if needed.

    **Why does the property need immediate attention?** (*Check all that apply.*)

    ☐  It poses or is alleged to pose a threat of imminent and identifiable hazard to public health or safety.

        What is the hazard? _____

    ☐  It needs to be physically secured or protected from the weather.

    ☐  It includes perishable goods or assets that could quickly deteriorate or lose value without attention (for example, livestock, seasonal goods, meat, dairy, produce, or securities-related assets or other options).

    ☐  Other _____

    **Where is the property?**  _____
                               Number     Street

                        _____
                               City                 State    Zip Code

    **Is the property insured?**

    ☐ No
    ☐ Yes.  Insurance agency  _____

             Contact name  _____

             Phone  _____

---

### Statistical and administrative information

**13. Debtor's estimation of available funds**

*Check one:*

☐  Funds will be available for distribution to unsecured creditors.
☒  After any administrative expenses are paid, no funds will be available for distribution to unsecured creditors.

Debtor  **CARD Holdings, LLC**                                  Case number *(if known)* _____
        Name

---

| 14. Estimated number of creditors (on a consolidated basis)[1] | ☐ 1-49 ☐ 50-99 ☐ 100-199 ☐ 200-999 | ☒ 1,000-5,000 ☐ 5,001-10,000 ☐ 10,001-25,000 | ☐ 25,001-50,000 ☐ 50,001-100,000 ☐ More than 100,000 |
|---|---|---|---|

| 15. Estimated assets (on a consolidated basis) | ☐ $0-$50,000 ☐ $50,001-$100,000 ☐ $100,001-$500,000 ☐ $500,001-$1 million | ☐ $1,000,001-$10 million ☐ $10,000,001-$50 million ☒ $50,000,001-$100 million ☐ $100,000,001-$500 million | ☐ $500,000,001-$1 billion ☐ $1,000,000,001-$10 billion ☐ $10,000,000,001-$50 billion ☐ More than $50 billion |
|---|---|---|---|

| 16. Estimated liabilities (on a consolidated basis) | ☐ $0-$50,000 ☐ $50,001-$100,000 ☐ $100,001-$500,000 ☐ $500,001-$1 million | ☐ $1,000,001-$10 million ☐ $10,000,001-$50 million ☐ $50,000,001-$100 million ☒ $100,000,001-$500 million | ☐ $500,000,001-$1 billion ☐ $1,000,000,001-$10 billion ☐ $10,000,000,001-$50 billion ☐ More than $50 billion |
|---|---|---|---|

## Request for Relief, Declaration, and Signatures

**WARNING --** Bankruptcy fraud is a serious crime. Making a false statement in connection with a bankruptcy case can result in fines up to $500,000 or imprisonment for up to 20 years, or both. 18 U.S.C. §§ 152, 1341, 1519, and 3571.

**17. Declaration and signature of authorized representative of debtor**

The debtor requests relief in accordance with the chapter of title 11, United States Code, specified in this petition.

I have been authorized to file this petition on behalf of the debtor.

I have examined the information in this petition and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on    **6/11/2023**
               MM/ DD / YYYY

✗  **/s/ Jennifer Webster**                              **Jennifer Webster**
   Signature of authorized representative of debtor       Printed name

Title  **Authorized Signatory**

**18. Signature of attorney**

✗  **/s/ Matthew D. Cavenaugh**        Date  **6/11/2023**
   Signature of attorney for debtor          MM/DD/YYYY

**Matthew D. Cavenaugh**
Printed name

**Jackson Walker LLP**
Firm name

**1401 McKinney Street, Suite 1900**
Number                    Street

**Houston**                                    **Texas**        **77010**
City                                           State          ZIP Code

**(713) 752-4200**                             **mcavenaugh@jw.com**
Contact phone                                  Email address

**24062656**                        **Texas**
Bar number                          State

---

[1] Reflects estimates on a consolidated basis inclusive of the four affiliate entities subsequently disclosed as of March 31, 2023.

| Fill in this information to identify the case: |
| --- |
| United States Bankruptcy Court for the:<br>**Southern District of Texas**<br>(State) |
| Case number *(if known)*: _____   Chapter __11__ |

☐ Check if this is an
amended filing

## Rider 1
## Pending Bankruptcy Cases Filed by the Debtor and Affiliates of the Debtor

On the date hereof, each of the entities listed below (collectively, the "Debtors") filed a petition in the United States Bankruptcy Court for the Southern District of Texas for relief under chapter 11 of title 11 of the United States Code.  The Debtors have moved for joint administration of these cases under the case number assigned to the chapter 11 case of [Center for Autism and Related Disorders, LLC].

- **Center for Autism and Related Disorders, LLC**
- **CARD Holdings, LLC**
- **CARD Intermediate Holdings I, LLC**
- **CARD Intermediate Holdings II, LLC**
- **SKILLS Global, LLC**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| CARD HOLDINGS, LLC, | ) | Case No. 23-_____(___) |
| | ) | |
| Debtor. | ) | |
| | ) | |

### LIST OF EQUITY SECURITY HOLDERS[2]

| Equity Holders | Address of Equity Holder | Percentage of Equity Held |
|---|---|---|
| Cardinal Buyer, LLC | 345 Park Avenue<br>New York, NY 10154 | 69.9262% |
| Haftshance, LLC | 996 Royal Marco Way<br>Marco Island, FL 34145 | 20.1452% |
| CARD Management, LLC | 9089 S Pecos Road, Suite 3600<br>Henderson, NV 89074 | 7.9173% |
| Clover Fields Enterprises, LLC | 21 Third Street North, Suite 400<br>Minneapolis, MN 55401-7510 | 1.5400% |
| Doreen Granpeesheh Living Trust | 996 Royal Marco Way<br>Marco Island, FL 34145 | 0.4713% |

---

[2]   This list serves as the disclosure required to be made by the debtor pursuant to Rule 1007 of the Federal Rules of Bankruptcy Procedure.  All equity positions listed indicate the record holder of such equity as of the date of commencement of the chapter 11 case.

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| CARD HOLDINGS, LLC, | ) | Case No. 23-_____(___) |
| | ) | |
| Debtor. | ) | |
| | ) | |

**CORPORATE OWNERSHIP STATEMENT**

Pursuant to Rules 1007(a)(1) and 7007.1 of the Federal Rules of Bankruptcy Procedure, the following are corporations, other than a government unit, that directly or indirectly own 10% or more of any class of the debtor's equity interest:

| Shareholders | Approximate Percentage of Shares Held |
|---|---|
| Cardinal Buyer, LLC (Blackstone) | 69.9% |
| Haftshance, LLC | 20.1% |

**Fill in this information to identify the case:**

Debtor name: **Center for Autism and related Disorders, LLC, et al.** [1]

United States Bankruptcy Court for the _____ **Southern District of Texas** _____
(State)

Case number (*If known*): _____

☐ Check if this is an amended filing

## Official Form 204

## Chapter 11 or Chapter 9 Cases: Consolidated List of Creditors Who Have the 30 Largest Unsecured Claims and Are Not Insiders
**12/15**

A list of creditors holding the 30 largest unsecured claims must be filed in a Chapter 11 or Chapter 9 case.  Include claims which the debtor disputes. Do not include claims by any person or entity who is an insider, as defined in 11 U.S.C. § 101(31).  Also, do not include claims by secured creditors, unless the unsecured claim resulting from inadequate collateral value places the creditor among the holders of the 30 largest unsecured claims.

| | Name of creditor and complete mailing address, including zip code | Name, telephone number, and email address of creditor contact | Nature of the claim (for example, trade debts, bank loans, professional services, and government contracts) | Indicate if claim is contingent, unliquidated, or disputed | Amount of unsecured claim If the claim is fully unsecured, fill in only unsecured claim amount. If claim is partially secured, fill in total claim amount and deduction for value of collateral or setoff to calculate unsecured claim. | | |
|---|---|---|---|---|---|---|---|
| | | | | | Total claim, if partially secured | Deduction for value of collateral or setoff | Unsecured claim |
| 1 | Douglas Emmett 2000, LLC 1299 Ocean Ave, Suite 1000 Santa Monica, CA 90401 | Douglas Avalos, Real Estate Agent, 310-255-7700 davalos@douglasemmett.com | Lease Obligation | Contingent | | | $1,468,409 |
| 2 | VWi REVENUE CYCLE MANAGEMENT, INC. 2211 Fruitville Road Sarasota, FL 34237 | Robert Sherman, Chief Revenue Officer, 941-363-5200 rsherman@vwinc.com | AR & Billing Services | Contingent | | | $ 868,701 |
| 3 | Coverall North America 2955 Momentum Place Chicago, IL 60689 | Alan Harris, Vice President, National Accounts confirmations@coverall.com | Facility Services | Contingent | | | $588,963 |
| 4 | SHI INTERNATIONAL CORP. 290 DAVIDSON AVE Sommerset, NJ 08873 | Cameron Mulloy, Sales Account Manager 888-764-8888 JOSHUA_ROSARIO@SHI.COM, cameron_mulloy@shi.com | IT Services | Contingent | | | $480,753 |
| 5 | UNLIMITED TECHNOLOGY SYSTEMS, LLC 9280 Montgomery Road Suite 200 Cincinnati, OH 45242 | Brian J. Gockerman, Chief Executive Officer 513-821-3012 AR@UNLIMITEDSYSTEMS.COM | IT Services | Contingent | | | $325,190 |
| 6 | ServiceChannel 6200 Stoneridge Mall Road Suite 450 Pleasanton, CA 94588 | Brian Chase, General Counsel, 1-800-508-6695 ar@servicechannel.com | Facility Services | Contingent | | | $300,000 |

---

[1]   The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are:  Center for Autism and Related Disorders, LLC (1512); CARD Holdings, LLC (1453); CARD Intermediate Holdings I, LLC (N/A); CARD Intermediate Holdings II, LLC (3953); and SKILLS Global, LLC (4192).  The location of the Debtors' principal place of business is 9089 S Pecos Rd., Suite 3600, Henderson, Nevada 89074.

| | Name of creditor and complete mailing address, including zip code | Name, telephone number, and email address of creditor contact | Nature of the claim (for example, trade debts, bank loans, professional services, and government contracts) | Indicate if claim is contingent, unliquidated, or disputed | Amount of unsecured claim If the claim is fully unsecured, fill in only unsecured claim amount. If claim is partially secured, fill in total claim amount and deduction for value of collateral or setoff to calculate unsecured claim. | | |
|---|---|---|---|---|---|---|---|
| | | | | | Total claim, if partially secured | Deduction for value of collateral or setoff | Unsecured claim |
| 7 | Granite Telecommunications, LLC 100 Newport Avenue Extension Quincy MA 2171 | Rand Currier, Chief Operating Officer, 866-847-1500 paymentcenter@granitenet.com | Utility Services | Contingent | | | $265,056 |
| 8 | HumaneBITS (IBT) 15925 Carmenita Road Cerritos, CA 90703 | Neelam Chavan, Chief Technology Officer 562-203-1686 contact@humanebits.com | Credentialing Services | Contingent | | | $235,368 |
| 9 | Alight Solutions LLC 4 Overlook Point #4OP Lincolnshire, IL 60069 | Justin Mhley, Vice President Professional Services 224-737-7000 carlos.rodriguez.3@alight.com, justin.mhley@alight.com | HRIS Services | Contingent | | | $226,858 |
| 10 | Jones Lang LaSalle Americas Inc 200 East Randolph Drive 43 Floor Chicago, IL 60601 | Mateusz Wujec, Lease Accounting Director corp.ar@amjll.zendesk.com | Real Estate Services | Contingent | | | $207,799 |
| 11 | Workday, Inc. 6110 Stoneridge Mall Road Pleasanton, CA 94588 | Michael Magaro, Senior VP, Business Finance 1-877-967-5329 accounts.receivable@workday.com, ar.collections@workday.com | IT Services | Contingent | | | $178,271 |
| 12 | Mitel Networks, Inc. 1146 N Alma School Road Mesa, AZ 85201 | Dan Watters, Manager of Global Real Estate 613-691-3649 cashapp@mitel.com | Lease Obligation | Contingent | | | $172,751 |
| 13 | G&C Mansell Investors, LLC 1499 W. Palmetto Park Rd Ste. 415 Boca Raton, FL 33486 | Anuj Grover, Managing Member 954-516-7001 | Lease Obligation | Contingent | | | $165,000 |
| 14 | MasterCorp Commercial Services PO BOX 80913 Phoenix AZ 85060 | ATTN: Legal Department | Facility Services | Contingent | | | $136,656 |
| 15 | Felix Continental LLC 1219 Lomita Blvd., #208 Harbor City, CA 90710 | Baiyan Li, Manager reese.j@felixca.com | Lease Obligation | Contingent | | | $136,080 |
| 16 | Omninet Hamilton, LP 9420 Wilshire Blvd. Fourth Floor Beverly Hills, CA 90212 | Michael Danielpour, Manager albertk@omninet.com | Lease Obligation | Contingent | | | $135,000 |
| 17 | Staples Advantage Dept LA 1368- PO Box 660409 Dallas, TX 75266-0409 | ATTN: Legal Department ARREmittance@staples.com | Supplies Provider | Contingent | | | $130,843 |
| 18 | SingerLewak, LLP 10960 Wilshire Blvd., #1100 Los Angeles, CA 90024 | Amanda Schlank, Partner aschlank@singerlewak.com, dcanales@singerlewak.com | Tax Services | Contingent | | | $129,261 |

| | Name of creditor and complete mailing address, including zip code | Name, telephone number, and email address of creditor contact | Nature of the claim (for example, trade debts, bank loans, professional services, and government contracts) | Indicate if claim is contingent, unliquidated, or disputed | Amount of unsecured claim If the claim is fully unsecured, fill in only unsecured claim amount. If claim is partially secured, fill in total claim amount and deduction for value of collateral or setoff to calculate unsecured claim. | | |
|---|---|---|---|---|---|---|---|
| | | | | | Total claim, if partially secured | Deduction for value of collateral or setoff | Unsecured claim |
| 19 | Staples Technology Solutions P.O. Box 95230 Chicago, IL 60694-5230 | Maria Barreto, Leasing Coordinator ICGS.Accounting@staples.com, Maria.barreto@staples.com | IT Services | Contingent | | | $129,020 |
| 20 | The Siegfried Group, LLP 1201 N Market Street Suite 700 Wilmington, DE 19801 | David Patterson, Controller dpatterson@siegfriedgroup.com | Consulting Services | Contingent | | | $123,090 |
| 21 | 8700 Creekside, LLC 2233 NW 23rd Ave., #100 Portland, OR 97210 | Amy Einstein, Director of Asset Management 503-292-7733 amye@edgedevelop.com liz@edgedevelop.com | Lease Obligation | Contingent | | | $112,766 |
| 22 | AP Concord 575 Owner LLC 93 Summer Street, 2nd Floor Boston, MA 02110 | Kevin McCall, Chief Executive Officer 617-451-9800 kmccall@paradigmprop.com | Lease Obligation | Contingent | | | $110,000 |
| 23 | 1100 H Street, LLC 1054 31st St NW, Suite 1000 Washington, D.C. 20007 | Theodore Vogel, Director of Leasing 202-342-1054 cherring@rbpropertiesinc.com | Lease Obligation | Contingent | | | $104,013 |
| 24 | Cranbrook Realty Investment Fund, L.P. 4701 Sisk Road, Suite 101 Modesto, CA 95356 | ATTN: Legal Department 209-549-4960 | Lease Obligation | Contingent | | | $101,154 |
| 25 | Marin Simgo, LLC 4607 Lakeview Canyon Road #658 Westlake Village, CA 91361 | Adrian Goldstein, Manager 818-636-0600 accounting@simgo18.com | Lease Obligation | Contingent | | | $100,000 |
| 26 | HireRight LLC 3349 Michelson Dr. Suite 150 Irvine, CA 92612 | ATTN: Legal Department billing@hireright.com | HR Services | Contingent | | | $ 95,314 |
| 27 | Abacus Technical Services LLC 7800 Dallas Pkwy, Suite 300 Plano, TX 75024 | Steve Gunner, Chief Executive Officer Accounting@Abacustechnical.com | Professional Services | Contingent | | | $91,500 |
| 28 | CLOUDREACH INC. 330 North Wabash, 23rd Floor Chicago, IL 60611 | Maddy Goldfarb, Head of Legal finops@cloudreach.com, credit.control@CLOUDREACH.COM | IT Services | Contingent | | | $86,980 |
| 29 | Contra Costa Health Plan - Medicaid 595 Center Avenue, Suite 100 Martinez, CA 94553 | Sharron Mackey, CEO, Contra Costa Health Plan 925-313-6000 providerrelations@cchealth.org | Benefits Related Services | Contingent | | | $85,924 |
| 30 | PricewaterhouseCoopers LLP PO Box 952282 Dallas, TX 75395-2282 | David Bohl, Deals Partner 614-477-0691 david.a.bohl@pwc.com, david.stainback@pwc.com | Professional Services | Contingent | | | $84,100 |

**Resolutions**

**June 11, 2023**

**Card Holdings, LLC**

The members of the special restructuring committee (the "Special Restructuring Committee") of the board of directors (the "Board") of Card Holdings, LLC organized and existing under the laws of the State of Delaware (together with its subsidiaries, collectively the "Company") at a duly called meeting of the Special Restructuring Committee hereby take the following actions and adopt the following resolutions (these "Resolutions"):

**WHEREAS**, in connection with a potential restructuring, the Special Restructuring Committee has considered the Company's liabilities and liquidity situation, as well as the long-term strategic alternatives available to the Company;

**WHEREAS**, on October 20, 2022, the Board established a special restructuring committee (the "Special Restructuring Committee") to to determine, review, negotiate, approve, authorize, and act upon, on behalf of the Company, with advice from the Company's financial and legal advisors, any proposed financial restructuring of the Company and any matters arising in relation to a restructuring process or any proposed merger, acquisition, or other corporate transaction involving the Company, in each case to address the liquidity needs of the Company, in each case, other than any investigation, settlement and/or prosecution of claims against the shareholders, directors and officers of the Company and its subsidiaries and any related activities or actions;

**WHEREAS**, the Special Restructuring Committee has reviewed and considered the presentations by the Company's advisors (the "Restructuring Advisors") regarding the liabilities and liquidity of the Company, the strategic alternatives available to them, and the impact of the foregoing on the Company's business;

**WHEREAS**, the Special Restructuring Committee has had adequate opportunity to consult with the Company's authorized officers and representatives ("Management") and the Company's Restructuring Advisors and to fully consider each of the strategic alternatives available to the Company;

## RESTRUCTURING SUPPORT AGREEMENT

**WHEREAS**, the Special Restructuring Committee has reviewed and considered the materials and presentations by Management and the Restructuring Advisors and the recommendations of Management and the Restructuring Advisors that the Company enter into that certain restructuring support agreement (the "Restructuring Support Agreement"), including all other exhibits, schedules, attachments, and ancillary documents or agreements related thereto;

**WHEREAS**, the Special Restructuring Committee has reviewed and considered the Restructuring Support Agreement's provisions providing for the implementation of a joint chapter

11 plan of reorganization for the Companies (as may be amended, modified, or supplemented from time to time, the "Plan") consistent with the Restructuring Support Agreement and related disclosures (as may be amended, modified, or supplemented from time to time, the "Disclosure Statement");

WHEREAS, the Company has negotiated the Restructuring Support Agreement with the Consenting Stakeholders (as defined in the Restructuring Support Agreement);

WHEREAS, the Special Restructuring Committee has had the opportunity to consult with Management and the Restructuring Advisors and obtain additional information, and the Special Restructuring Committee and each Manager has determined that the terms of the Restructuring Support Agreement are fair and reasonable to the Company under the circumstances;

WHEREAS, the Restructuring Support Agreement provides that it can be terminated if the Special Restructuring Committee determines, upon advice of counsel, that proceeding with the transactions contemplated thereby would be inconsistent with the exercise of its fiduciary duties or applicable law;

WHEREAS, after careful consideration, the Special Restructuring Committee has determined that the Company's entry into the Restructuring Support Agreement and performance of the transactions contemplated thereby are advisable and in the best interests of the Company and its stakeholders; and

WHEREAS, the Special Restructuring Committee desires to approve the following resolutions.

NOW, THEREFORE, BE IT RESOLVED, that the Company and the Restructuring Advisors be, and by the foregoing resolutions are, authorized to finalize, execute, and deliver the Restructuring Support Agreement, subject to appropriate modifications and final negotiations as agreed by an Authorized Officer (as defined below);

FURTHER RESOLVED, that the form, terms, and provisions of the Restructuring Support Agreement and the agreements and transactions contemplated by the Restructuring Support Agreement are hereby authorized, adopted, and approved by the Special Restructuring Committee with such changes as may be agreed by an Authorized Officer (as defined below) with such approval as evidence by such Authorized Officer's signature thereto; and

FURTHER RESOLVED, that the Company's execution and delivery of, and its performances of its obligations in connection with, the Restructuring Support Agreement or any other transactions or actions contemplated therein and in the foregoing resolutions are hereby, in each case, in all respects, authorized, and approved.

## CHAPTER 11 FILING

IT IS RESOLVED, that in the business judgment of the Special Restructuring Committee, it is desirable and in the best interests of the Company, their stakeholders, their creditors, and other parties in interest, that the Company shall be, and hereby is, in all respects authorized to file, or cause to be filed, a voluntary petition for relief (such voluntary petitions, collectively, the "Chapter

11 Cases") under the provisions of chapter 11 of title 11 of the United States Code, 11 U.S.C. § 101 et seq. (as amended, the "Bankruptcy Code") in the United States Bankruptcy Court for the Southern District of Texas (the "Bankruptcy Court") or other court of competent jurisdiction, and any other petition for relief or recognition or other order that may be desirable under applicable law in the United States; and

      **FURTHER RESOLVED**, that any person or persons designated and authorized to act by the Board or the Special Restructuring Committee, including the Chief Executive Officer, Chief Restructuring Officer, Chief Financial Officer, any Senior Vice President, the Secretary, any Assistant Secretary, any other officer of the Company, or any advisor and agent of the Company (each, an "Authorized Person"), acting alone or with one or more other Authorized Persons be, and hereby is, authorized, empowered, and directed to execute and file on behalf of the Company all petitions, schedules, lists, and other motions, papers, or documents (including the filing of financing statements), and to take any and all action that they deem necessary, appropriate, or desirable to obtain such relief, including, without limitation, any action necessary, appropriate, or desirable to maintain the ordinary course operations of the Company's business.

## RETENTION OF PROFESSIONALS

      **IT IS RESOLVED**, that each of the Authorized Persons of the Company, each acting individually and with full power of substitution be, and hereby is, authorized, empowered, and directed to employ the following professionals on behalf of the Company:  (i) the law firm of Kirkland & Ellis LLP and Kirkland & Ellis International LLP, as bankruptcy co-counsel; (ii) the law firm of Jackson Walker LLP, as local bankruptcy counsel; (iii) Triple P RTS, LLC, as restructuring advisor; (v) Livingstone Partners LLC, as financial advisor and investment banker; (vi) Stretto, Inc., as claims, noticing, and solicitation agent and administrative advisor; and (vi) any other legal counsel, accountants, financial advisors, restructuring advisors, or other professionals such Authorized Person deems necessary, appropriate, or advisable; each to represent and assist such Company in carrying out its duties and responsibilities and exercising its rights under the Bankruptcy Code and any applicable law (including, but not limited to, the law firms filing any pleadings or responses) and to take any and all actions to advance the rights and obligations of such Company, including filing any motions, objections, replies, applications, or pleadings; and in connection therewith, each of the Authorized Persons be, and hereby is, authorized, empowered, and directed, in accordance with the terms and conditions hereof, to execute (under the company or common seal of such Company, if appropriate) appropriate retention agreements, pay appropriate retainers, and to cause to be filed appropriate applications for authority to retain such professionals; and

      **FURTHER RESOLVED**, that the Engagement Letter, to be dated as of the date hereof, with Livingstone Partners LLC, which supersedes in full the prior Engagement Letter dated as of October 25, 2022 with Livingstone Partners LLC, is hereby approved in the form presented to the Special Restructuring Committee and an Authorized Officer is hereby authorized to enter into such revised Engagement Letter (with such changes as authorized by such Authorized Officer as evidenced by its signature thereto) and take all actions thereunder.

**ASSET PURCHASE AGREEMENT**

**WHEREAS**, the Company has negotiated and entered into that certain asset purchase agreement (including all exhibits and schedules related thereto, the "Stalking Horse Asset Purchase Agreement") with Pantogran LLC (the "Stalking Horse Buyer") to serve as the stalking horse for a marketing process for the sale of substantially all of the Company's assets, as previously approved and authorized by the Special Restructuring Committee and the Managers.

**RESOLVED**, that the Company's entry into the Stalking Horse Asset Purchase Agreement is hereby ratified and approved and, without limitation of the resolutions of the Special Restructuring Committee authorizing the entry into the Stalking Horse Asset Purchase Agreement, the Company is hereby authorized to undertake any and all related transactions contemplated thereby, including the bid protections, on the terms contained therein or on such other terms and conditions as the Authorized Persons, or any of them in their, his, or her sole discretion, determine to be necessary, appropriate, or desirable.

**RESOLVED**, without limitation of the resolutions of the Special Restructuring Committee authorizing the entry into the Stalking Horse Asset Purchase Agreement, that each of the Authorized Persons of the Company be, and hereby are, authorized, directed, and empowered in the name of, and on behalf of, the Company to execute and file, on behalf of the Company, the motion (the "Sale Motion" and bidding procedures thereunder, the "Bidding Procedures") with the Bankruptcy Court.

**RESOLVED**, without limitation of the resolutions of the Special Restructuring Committee authorizing the entry into the Stalking Horse Asset Purchase Agreement, that each of the Authorized Persons of the Company be, and hereby are, authorized, directed, and empowered in the name of, and on behalf of, each company to conduct the auction approved by the Bankruptcy Court pursuant to the Sale Motion and Bidding Procedures (the "Auction") and to negotiate, for and on behalf of the Companies, such agreements, documents, assignments, and instruments as may be necessary, appropriate, or desirable in connection with the sale to the Stalking Horse Buyer or such other successful bidder at the Auction.

**CASH COLLATERAL, DEBTOR-IN-POSSESSION FINANCING, AND ADEQUATE PROTECTION**

**IT IS RESOLVED**, that the Company will obtain benefits, which are necessary and convenient to the conduct, promotion, and attainment of the business of such Company, from (a) the use of collateral, including cash collateral, as that term is defined in section 363(a) of the Bankruptcy Code (the "Cash Collateral"), which is security for for certain prepetition secured lenders and (b) the incurrence of a $18 million senior secured superpriority debtor-in-possession financing facility, which shall include a full "roll up" of approximately $33.3 million in loans under the Company's prepetition superpriority delayed draw term loan facility (the "DIP Facility") on the terms and conditions set forth in the DIP Documents;

**FURTHER RESOLVED**, that in order to use and obtain the benefits of the DIP Facility and Cash Collateral, in accordance with section 363 of the Bankruptcy Code, the Company will provide certain adequate protection to the secured parties (the "Adequate Protection Obligations"),

as documented in a proposed order in interim and final form (the "DIP Order") and submitted for approval to the Bankruptcy Court;

**FURTHER RESOLVED**, that the form, terms, and provisions of the DIP Facility be, and hereby are, in all respects approved, and the Company is authorized to enter into the DIP Facility subject to approval by the Bankruptcy Court;

**FURTHER RESOLVED**, that the form, terms, and provisions of the DIP Order to which the Company is or will be subject, and the actions and transactions contemplated thereby be, and hereby are, authorized, adopted, and approved, and each of the Authorized Persons of the Company be, and hereby is, authorized, directed, and empowered, in the name of and on behalf of such Company, to take such actions and negotiate or cause to be prepared and negotiated and to execute, deliver, perform, and cause the performance of, the DIP Order and the DIP Facility, and such other agreements, certificates, instruments, notices, receipts, recordings, filings, petitions, motions, or other papers or documents to which such Company is or will be a party, including, but not limited to, any security and pledge agreement or guaranty agreement (collectively, with the DIP Order and the DIP Facility, the "DIP Documents"), incur and pay or cause to be paid all fees and expenses and engage such persons, in each case, in the form or substantially in the form thereof submitted to the Special Restructuring Committee of the Company, with such changes, additions, and modifications thereto as the officers of the Company executing the same shall approve, such approval to be conclusively evidenced by such officers' execution and delivery thereof;

**FURTHER RESOLVED**, that the Company, as debtor and debtor in possession under the Bankruptcy Code be, and hereby is, authorized to incur the Adequate Protection Obligations and to undertake any and all related transactions on substantially the same terms as contemplated under the DIP Documents (collectively, the "DIP Transactions"), including the guaranty of the obligations thereunder and the granting of liens on substantially all of its assets to secure such obligations;

**FURTHER RESOLVED**, that the Authorized Persons of the Company be, and they hereby are, authorized and directed, and each of them acting alone hereby is, authorized, directed, and empowered in the name of, and on behalf of, such Company, as debtor and debtor in possession, to take such actions as in their discretion is determined to be necessary, desirable, or appropriate and effectuate the DIP Transactions, including delivery of:  (a) the DIP Documents and such agreements, certificates, instruments, fee letters, guaranties, notices, and any and all other documents, including, without limitation, any amendments to any DIP Documents; and (b) such other agreements, instruments, certificates, notices, assignments, and documents as may be reasonably requested by the agents under the DIP Facility (the "DIP Agents") (clauses (a) and (b) of this paragraph, collectively, the "DIP Financing Documents");

**FURTHER RESOLVED**, that each of the Authorized Persons of the Company be, and hereby is, authorized, directed, and empowered in the name of, and on behalf of, such Company to file or to authorize the DIP Agents to file any Uniform Commercial Code (the "UCC") financing statements, any other equivalent filings, any intellectual property filings and recordation, and any necessary assignments for security or other documents in the name of such Company that the DIP Agents deems necessary or appropriate to perfect any lien or security interest granted under the DIP Order, including any such UCC financing statement containing a generic description of

collateral, such as "all assets," "all property now or hereafter acquired," and other similar descriptions of like import, and to execute and deliver, and to record or authorize the recording of, such mortgages and deeds of trust in respect of real property of such Company and such other filings in respect of intellectual and other property of such Company, in each case as the DIP Agents may reasonably request to perfect the security interests of the DIP Agents under the DIP Order; and

**FURTHER RESOLVED**, that each of the Authorized Persons of the Company be, and hereby is, authorized, directed, and empowered in the name of, and on behalf of, such Company to take all such further actions, including, without limitation, to pay or approve the payment of all fees and expenses payable in connection with the DIP Transactions and all fees and expenses incurred by or on behalf of such Company in connection with the foregoing resolutions, in accordance with the terms of the DIP Financing Documents, which shall in their sole judgment be necessary, proper, or advisable to perform such Company's obligations under or in connection with the DIP Order or any of the other DIP Financing Documents and the transactions contemplated therein and to carry out fully the intent of the foregoing resolutions.

## GENERAL AUTHORIZATION

**IT IS RESOLVED**, that any acts of the Company or of any Authorized Person, which acts would have been authorized by the foregoing resolutions except that such acts were taken prior to the adoption of such resolutions, are hereby severally ratified, confirmed, approved and adopted as acts in the name and on behalf of the Company;

**FURTHER RESOLVED**, that in order to fully carry out the intent and effectuate the purposes of the foregoing resolutions, the Authorized Persons are hereby authorized to take all such further action, and to execute and deliver all such further instruments and documents, in the name and on behalf of the Company, and to pay all such fees and expenses, which shall be necessary;

**FURTHER RESOLVED**, that any Authorized Person, acting alone or with one or more other Authorized Persons be, and hereby is, authorized, empowered, and directed to take any and all action that he or she deems necessary or proper to assist the Special Restructuring Committee in carrying out the foregoing, in each case as requested by and under the direction of the Special Restructuring Committee; and

**FURTHER RESOLVED**, that the Special Restructuring Committee be, and hereby is, authorized to take all such further action, at the Company's expense, as the Special Restructuring Committee shall deem necessary, proper, or advisable consistent with these resolutions or in order to carry out fully the intent and purposes of these resolutions.

* * * *

**Omnibus Written Consent**

**June 11, 2023**

**Card Intermediate Holdings I, LLC**
**Card Intermediate Holdings II, LLC**
**Center for Autism and Related Disorders, LLC**
**Skills Global, LLC**

The the sole member or manager (each a "<u>Manager</u>" and together the "<u>Managers</u>") of each of the subsidiaries of Card Holdings, LLC ("<u>Holdings</u>"), which are Card Intermediate Holdings I, LLC, a Delaware limited liability company ("<u>Intermediate I</u>"), Card Intermediate Holdings II, LLC, a Delaware limited liability company ("<u>Intermediate II</u>") Center for Autism and Related Disorders, LLC, a California limited liability company ("<u>CARD</u>") and Skills Global, LLC ("<u>CARD</u>"), a California limited liability company ("<u>Skills Global</u>", together with Intermediate I, Intermediate II, CARD and Skills Global, collectively with Holdings, the "<u>Company</u>") hereby take the following actions and adopt the following resolutions (these "<u>Resolutions</u>") by written consent in lieu of holding a meeting pursuant to Section 18-404 of the Delaware Limited Liability Company Act and the California Revised Uniform Limited Liability Company Act, as applicable, and the relevant limited liability company agreement of the Company (as amended, supplemented, or modified from time to time, the "<u>LLC Agreement</u>"):

**WHEREAS**, in connection with a potential restructuring, the Managers have considered the Company's liabilities and liquidity situation, as well as the long-term strategic alternatives available to the Company;

**WHEREAS**, on October 20, 2022, the Board of Holdings established a special restructuring committee (the "<u>Special Restructuring Committee</u>") to to determine, review, negotiate, approve, authorize, and act upon, on behalf of the Company, with advice from the Company's financial and legal advisors, any proposed financial restructuring of the Company and any matters arising in relation to a restructuring process or any proposed merger, acquisition, or other corporate transaction involving the Company, in each case to address the liquidity needs of the Company, in each case, other than any investigation, settlement and/or prosecution of claims against the shareholders, directors and officers of the Company and its subsidiaries and any related activities or actions;

**WHEREAS**, the Special Restructuring Committee and Managers have reviewed and considered the presentations by the Company's advisors (the "<u>Restructuring Advisors</u>") regarding the liabilities and liquidity of the Company, the strategic alternatives available to them, and the impact of the foregoing on the Company's business;

**WHEREAS**, the Special Restructuring Committee and the Managers have had adequate opportunity to consult with the Company's authorized officers and representatives

("Management") and the Company's Restructuring Advisors and to fully consider each of the strategic alternatives available to the Company;

WHEREAS, the Special Restructuring Committee has approved resolutions consistent with the Resolutions set forth in this written consent with respect to the Company;

## RESTRUCTURING SUPPORT AGREEMENT

WHEREAS, the Special Restructuring Committee and Managers have reviewed and considered the materials and presentations by Management and the Restructuring Advisors and the recommendations of Management and the Restructuring Advisors that the Company enter into that certain restructuring support agreement (the "Restructuring Support Agreement"), including all other exhibits, schedules, attachments, and ancillary documents or agreements related thereto;

WHEREAS, the Special Restructuring Committee and Managers have reviewed and considered the Restructuring Support Agreement's provisions providing for the implementation of a joint chapter 11 plan of reorganization for the Companies (as may be amended, modified, or supplemented from time to time, the "Plan") consistent with the Restructuring Support Agreement and related disclosures (as may be amended, modified, or supplemented from time to time, the "Disclosure Statement");

WHEREAS, the Company has negotiated the Restructuring Support Agreement with the Consenting Stakeholders (as defined in the Restructuring Support Agreement);

WHEREAS, the Special Restructuring Committee and Managers have had the opportunity to consult with Management and the Restructuring Advisors and obtain additional information, and the Special Restructuring Committee and each Manager has determined that the terms of the Restructuring Support Agreement are fair and reasonable to the Company under the circumstances;

WHEREAS, the Restructuring Support Agreement provides that it can be terminated if the Special Restructuring Committee determines, upon advice of counsel, that proceeding with the transactions contemplated thereby would be inconsistent with the exercise of its fiduciary duties or applicable law;

WHEREAS, after careful consideration, the Special Restructuring Committee and each Manager has determined that the Company's entry into the Restructuring Support Agreement and performance of the transactions contemplated thereby are advisable and in the best interests of the Company and its stakeholders; and

WHEREAS,  each Manager desires to approve the following resolutions.

NOW, THEREFORE, BE IT RESOLVED, that the Company and the Restructuring Advisors be, and by the foregoing resolutions are, authorized to finalize, execute, and deliver the Restructuring Support Agreement, subject to appropriate modifications and final negotiations as agreed by an Authorized Officer (as defined below);

FURTHER RESOLVED, that the form, terms, and provisions of the Restructuring Support Agreement and the agreements and transactions contemplated by the Restructuring

Support Agreement are hereby authorized, adopted, and approved by the Special Restructuring Committee with such changes as may be agreed by an Authorized Officer (as defined below) with such approval as evidence by such Authorized Officer's signature thereto; and

**FURTHER RESOLVED**, that the Company's execution and delivery of, and its performances of its obligations in connection with, the Restructuring Support Agreement or any other transactions or actions contemplated therein and in the foregoing resolutions are hereby, in each case, in all respects, authorized, and approved.

## CHAPTER 11 FILING

**IT IS RESOLVED**, that in the business judgment of each Manager, it is desirable and in the best interests of the Company, their stakeholders, their creditors, and other parties in interest, that the Company shall be, and hereby is, in all respects authorized to file, or cause to be filed, a voluntary petition for relief (such voluntary petitions, collectively, the "Chapter 11 Cases") under the provisions of chapter 11 of title 11 of the United States Code, 11 U.S.C. § 101 et seq. (as amended, the "Bankruptcy Code") in the United States Bankruptcy Court for the Southern District of Texas (the "Bankruptcy Court") or other court of competent jurisdiction, and any other petition for relief or recognition or other order that may be desirable under applicable law in the United States; and

**FURTHER RESOLVED**, that any person or persons designated and authorized to act by the Board or the Special Restructuring Committee, including the Chief Executive Officer, Chief Restructuring Officer, Chief Financial Officer, any Senior Vice President, the Secretary, any Assistant Secretary, any other officer of the Company, or any advisor and agent of the Company (each, an "Authorized Person"), acting alone or with one or more other Authorized Persons be, and hereby is, authorized, empowered, and directed to execute and file on behalf of the Company all petitions, schedules, lists, and other motions, papers, or documents (including the filing of financing statements), and to take any and all action that they deem necessary, appropriate, or desirable to obtain such relief, including, without limitation, any action necessary, appropriate, or desirable to maintain the ordinary course operations of the Company's business.

## RETENTION OF PROFESSIONALS

**IT IS RESOLVED**, that each of the Authorized Persons of the Company, each acting individually and with full power of substitution be, and hereby is, authorized, empowered, and directed to employ the following professionals on behalf of the Company:  (i) the law firm of Kirkland & Ellis LLP and Kirkland & Ellis International LLP, as bankruptcy co-counsel; (ii) the law firm of Jackson Walker LLP, as local bankruptcy counsel; (iii) Triple P RTS, LLC, as restructuring advisor; (v) Livingstone Partners LLC, as financial advisor and investment banker; (vi) Stretto, Inc., as claims, noticing, and solicitation agent and administrative advisor; and (vi) any other legal counsel, accountants, financial advisors, restructuring advisors, or other professionals such Authorized Person deems necessary, appropriate, or advisable; each to represent and assist such Company in carrying out its duties and responsibilities and exercising its rights under the Bankruptcy Code and any applicable law (including, but not limited to, the law firms filing any pleadings or responses) and to take any and all actions to advance the rights and obligations of such Company, including filing any motions, objections, replies, applications, or pleadings; and in

connection therewith, each of the Authorized Persons be, and hereby is, authorized, empowered, and directed, in accordance with the terms and conditions hereof, to execute (under the company or common seal of such Company, if appropriate) appropriate retention agreements, pay appropriate retainers, and to cause to be filed appropriate applications for authority to retain such professionals; and

**FURTHER RESOLVED**, that the Engagement Letter, to be dated as of the date hereof, with Livingstone Partners LLC, which supersedes in full the prior Engagement Letter dated as of October 25, 2022 with Livingstone Partners LLC, is hereby approved in the form presented to the Special Restructuring Committee and an Authorized Officer is hereby authorized to enter into such revised Engagement Letter (with such changes as authorized by such Authorized Officer as evidenced by its signature thereto) and take all actions thereunder.

## ASSET PURCHASE AGREEMENT

**WHEREAS**, the Company has negotiated and entered into that certain asset purchase agreement (including all exhibits and schedules related thereto, the "Stalking Horse Asset Purchase Agreement") with Pantogran LLC (the "Stalking Horse Buyer") to serve as the stalking horse for a marketing process for the sale of substantially all of the Company's assets, as previously approved and authorized by the Special Restructuring Committee and the Managers.

**RESOLVED**, that the Company's entry into the Stalking Horse Asset Purchase Agreement is hereby ratified and approved and, without limitation of the resolutions of the Special Restructuring Committee and Managers authorizing the entry into the Stalking Horse Asset Purchase Agreement, the Company is hereby authorized to undertake any and all related transactions contemplated thereby, including the bid protections, on the terms contained therein or on such other terms and conditions as the Authorized Persons, or any of them in their, his, or her sole discretion, determine to be necessary, appropriate, or desirable.

**RESOLVED**, without limitation of the resolutions of the Special Restructuring Committee and Managers authorizing the entry into the Stalking Horse Asset Purchase Agreement, that each of the Authorized Persons of the Company be, and hereby are, authorized, directed, and empowered in the name of, and on behalf of, the Company to execute and file, on behalf of the Company, the motion (the "Sale Motion" and bidding procedures thereunder, the "Bidding Procedures") with the Bankruptcy Court.

**RESOLVED**, without limitation of the resolutions of the Special Restructuring Committee and Managers authorizing the entry into the Stalking Horse Asset Purchase Agreement, that each of the Authorized Persons of the Company be, and hereby are, authorized, directed, and empowered in the name of, and on behalf of, each company to conduct the auction approved by the Bankruptcy Court pursuant to the Sale Motion and Bidding Procedures (the "Auction") and to negotiate, for and on behalf of the Companies, such agreements, documents, assignments, and

instruments as may be necessary, appropriate, or desirable in connection with the sale to the Stalking Horse Buyer or such other successful bidder at the Auction.

## CASH COLLATERAL, DEBTOR-IN-POSSESSION FINANCING, AND ADEQUATE PROTECTION

**IT IS RESOLVED**, that the Company will obtain benefits, which are necessary and convenient to the conduct, promotion, and attainment of the business of such Company, from (a) the use of collateral, including cash collateral, as that term is defined in section 363(a) of the Bankruptcy Code (the "<u>Cash Collateral</u>"), which is security for for certain prepetition secured lenders and (b) the incurrence of a $18 million senior secured superpriority debtor-in-possession financing facility, which shall include a full "roll up" of approximately $33.3 million in loans under the Company's prepetition superpriority delayed draw term loan facility (the "<u>DIP Facility</u>") on the terms and conditions set forth in the DIP Documents;

**FURTHER RESOLVED**, that in order to use and obtain the benefits of the DIP Facility and Cash Collateral, in accordance with section 363 of the Bankruptcy Code, the Company will provide certain adequate protection to the secured parties (the "<u>Adequate Protection Obligations</u>"), as documented in a proposed order in interim and final form (the "<u>DIP Order</u>") and submitted for approval to the Bankruptcy Court;

**FURTHER RESOLVED**, that the form, terms, and provisions of the DIP Facility be, and hereby are, in all respects approved, and the Company is authorized to enter into the DIP Facility subject to approval by the Bankruptcy Court;

**FURTHER RESOLVED**, that the form, terms, and provisions of the DIP Order to which the Company is or will be subject, and the actions and transactions contemplated thereby be, and hereby are, authorized, adopted, and approved, and each of the Authorized Persons of the Company be, and hereby is, authorized, directed, and empowered, in the name of and on behalf of such Company, to take such actions and negotiate or cause to be prepared and negotiated and to execute, deliver, perform, and cause the performance of, the DIP Order and the DIP Facility, and such other agreements, certificates, instruments, notices, receipts, recordings, filings, petitions, motions, or other papers or documents to which such Company is or will be a party, including, but not limited to, any security and pledge agreement or guaranty agreement (collectively, with the DIP Order and the DIP Facility, the "<u>DIP Documents</u>"), incur and pay or cause to be paid all fees and expenses and engage such persons, in each case, in the form or substantially in the form thereof submitted to the Special Restructuring Committee of the Company, with such changes, additions, and modifications thereto as the officers of the Company executing the same shall approve, such approval to be conclusively evidenced by such officers' execution and delivery thereof;

**FURTHER RESOLVED**, that the Company, as debtor and debtor in possession under the Bankruptcy Code be, and hereby is, authorized to incur the Adequate Protection Obligations and to undertake any and all related transactions on substantially the same terms as contemplated under the DIP Documents (collectively, the "<u>DIP Transactions</u>"), including the guaranty of the obligations thereunder and the granting of liens on substantially all of its assets to secure such obligations;

**FURTHER RESOLVED**, that the Authorized Persons of the Company be, and they hereby are, authorized and directed, and each of them acting alone hereby is, authorized, directed, and empowered in the name of, and on behalf of, such Company, as debtor and debtor in possession, to take such actions as in their discretion is determined to be necessary, desirable, or appropriate and effectuate the DIP Transactions, including delivery of:  (a) the DIP Documents and such agreements, certificates, instruments, fee letters, guaranties, notices, and any and all other documents, including, without limitation, any amendments to any DIP Documents; and (b) such other agreements, instruments, certificates, notices, assignments, and documents as may be reasonably requested by the agents under the DIP Facility (the "DIP Agents") (clauses (a) and (b) of this paragraph, collectively, the "DIP Financing Documents");

**FURTHER RESOLVED**, that each of the Authorized Persons of the Company be, and hereby is, authorized, directed, and empowered in the name of, and on behalf of, such Company to file or to authorize the DIP Agents to file any Uniform Commercial Code (the "UCC") financing statements, any other equivalent filings, any intellectual property filings and recordation, and any necessary assignments for security or other documents in the name of such Company that the DIP Agents deems necessary or appropriate to perfect any lien or security interest granted under the DIP Order, including any such UCC financing statement containing a generic description of collateral, such as "all assets," "all property now or hereafter acquired," and other similar descriptions of like import, and to execute and deliver, and to record or authorize the recording of, such mortgages and deeds of trust in respect of real property of such Company and such other filings in respect of intellectual and other property of such Company, in each case as the DIP Agents may reasonably request to perfect the security interests of the DIP Agents under the DIP Order; and

**FURTHER RESOLVED**, that each of the Authorized Persons of the Company be, and hereby is, authorized, directed, and empowered in the name of, and on behalf of, such Company to take all such further actions, including, without limitation, to pay or approve the payment of all fees and expenses payable in connection with the DIP Transactions and all fees and expenses incurred by or on behalf of such Company in connection with the foregoing resolutions, in accordance with the terms of the DIP Financing Documents, which shall in their sole judgment be necessary, proper, or advisable to perform such Company's obligations under or in connection with the DIP Order or any of the other DIP Financing Documents and the transactions contemplated therein and to carry out fully the intent of the foregoing resolutions.

## GENERAL AUTHORIZATION

**IT IS RESOLVED**, that any acts of the Company or of any Authorized Person, which acts would have been authorized by the foregoing resolutions except that such acts were taken prior to the adoption of such resolutions, are hereby severally ratified, confirmed, approved and adopted as acts in the name and on behalf of the Company;

**FURTHER RESOLVED**, that in order to fully carry out the intent and effectuate the purposes of the foregoing resolutions, the Authorized Persons are hereby authorized to take all such further action, and to execute and deliver all such further instruments and documents, in the name and on behalf of the Company, and to pay all such fees and expenses, which shall be necessary;

**FURTHER RESOLVED**, that any Authorized Person, acting alone or with one or more other Authorized Persons be, and hereby is, authorized, empowered, and directed to take any and all action that he or she deems necessary or proper to assist the Special Restructuring Committee in carrying out the foregoing, in each case as requested by and under the direction of the Special Restructuring Committee; and

**FURTHER RESOLVED**, that the Special Restructuring Committee be, and hereby is, authorized to take all such further action, at the Company's expense, as the Special Restructuring Committee shall deem necessary, proper, or advisable consistent with these resolutions or in order to carry out fully the intent and purposes of these resolutions.

\* \* \* \*

The actions taken by this written consent shall have the same force and effect as if taken at a meeting of the Manager, pursuant to the relevant LLC Agreement and the applicable laws of the State of Delaware or California, as appropriate.

This written consent may be executed in one or more facsimile, electronic, or original counterparts, each of which shall be deemed an original and all of which together shall constitute one instrument.

\* \* \* \*

IN WITNESS WHEREOF, the undersigned, constituting the Managers, hereby consent to, approve, and adopt the foregoing Resolutions effective as of the date first written above

**CARD HOLDINGS, LLC**, as sole member of Card Intermediate Holdings I, LLC

By:_____
Name: Jennifer Webster
Title: Authorized Officer

**CARD INTERMEDIATE HOLDINGS I, LLC**, as sole member of Card Intermediate Holdings II, LLC

By:_____
Name: Jennifer Webster
Title: Authorized Officer

**CARD INTERMEDIATE II, LLC,** as sole member of Center for Autism and Related Disorders, LLC

By:_____
Name: Jennifer Webster
Title: Authorized Officer

**CENTER FOR AUTISM AND RELATED DISORDERS, LLC,** as sole member of Skills Global, LLC

By:_____
Name: Jennifer Webster
Title: Authorized Officer

Fill in this information to identify the case and this filing:

| | |
|---|---|
| Debtor Name | **CARD Holdings, LLC** |
| United States Bankruptcy Court for the: | **Southern District of Texas** |
| | (State) |
| Case number (If known): | |

## Official Form 202
## Declaration Under Penalty of Perjury for Non-Individual Debtors          12/15

An individual who is authorized to act on behalf of a non-individual debtor, such as a corporation or partnership, must sign and submit this form for the schedules of assets and liabilities, any other document that requires a declaration that is not included in the document, and any amendments of those documents. This form must state the individual's position or relationship to the debtor, the identity of the document, and the date. Bankruptcy Rules 1008 and 9011.

WARNING -- Bankruptcy fraud is a serious crime. Making a false statement, concealing property, or obtaining money or property by fraud in connection with a bankruptcy case can result in fines up to $500,000 or imprisonment for up to 20 years, or both. 18 U.S.C. §§ 152, 1341, 1519, and 3571.

### Declaration and signature

I am the president, another officer, or an authorized agent of the corporation; a member or an authorized agent of the partnership; or another individual serving as a representative of the debtor in this case.

I have examined the information in the documents checked below and I have a reasonable belief that the information is true and correct:

☐ *Schedule A/B: Assets-Real and Personal Property (Official Form 206A/B)*

☐ *Schedule D: Creditors Who Have Claims Secured by Property (Official Form 206D)*

☐ *Schedule E/F: Creditors Who Have Unsecured Claims (Official Form 206E/F)*

☐ *Schedule G: Executory Contracts and Unexpired Leases (Official Form 206G)*

☐ *Schedule H: Codebtors (Official Form 206H)*

☐ *Summary of Assets and Liabilities for Non-Individuals (Official Form 206Sum)*

☐ Amended Schedule

☒ *Chapter 11 or Chapter 9 Cases: List of Creditors Who Have the 30 Largest Unsecured Claims and Are Not Insiders (Official Form 204)*

☒ Other document that requires a declaration **List of Equity Security Holders and Corporate Ownership Statement**

I declare under penalty of perjury that the foregoing is true and correct.

| | | |
|---|---|---|
| Executed on | **6/11/2023** | ☒ */s/ Jennifer Webster* |
| | MM/ DD/YYYY | Signature of individual signing on behalf of debtor |
| | | **Jennifer Webster** |
| | | Printed name |
| | | **Authorized Signatory** |
| | | Position or relationship to debtor |

**Official Form 202**                    **Declaration Under Penalty of Perjury for Non-Individual Debtors**